The parties were divorced in 1986. Incorporated into the divorce decree was an agreement between the parties which provided for joint care, custody, and control of the minor children, with the mother to have physical control subject to the father's right to reasonable visitation.
In August 1988, both parties petitioned for a change in the custody arrangement. After an ore tenus proceeding, the trial court entered an order which, in pertinent part, is as follows:
 "That the parties were divorced by this court on October 7th, 1986, their agreement being adopted by the court as a part of its judgment. There, the parties were awarded the joint custody of their minor children: [K.E.], now age 7, and [C.E.], now age 5; the [mother] was given primary physical custody, the [father] allowed certain visitation, of the children. That both parties have married and both families continue to live in Albertville, Alabama.
 "The parties were relatively cooperative concerning custody and visitation for a few months following their divorce, whereupon any semblance of cooperation between them disappeared. Thence, one issue to be determined arose, that of visitation.
 "Additionally, although the defendant has not raised the issue of abuse of the children by any pleading, such issue was submitted fully by the parties, without objection. The court can only assume that this was trial strategy on the part of defendant's counsel, in the attempt to shift the burden of proof. Be that as it may, the second issue of this action was presented, i.e., sexual abuse of the minor children.
 "As to the first issue, the appellate courts of this State have held that custody of children should not be modified due to problems of visitation; that the parties are the more appropriate ones to solve this problem. *Page 42 
 "In spite of the parties' obvious intelligence, education and station in life, the court is of the opinion that, in regard to their children, there is little hope of mature cooperation between them, nor a solution without compulsion. The court notes that the provision of 'joint custody,' a term that defies specific definition, requires cooperation that would be difficult for most divorced parents. It appears that many divorced custodial parents would prefer that the other parent would just disappear; it also appears that to many, death is easier to accept and to adjust to than is divorce.
 "Many parents cannot quickly accept the premise that upon divorce, their lives are no longer so much their own, and, as to their children, the court will intercede. Children are, sadly, no longer a familial 'ours,' but must be shared with a sometimes adversarial stranger. The court is satisfied from the evidence that such intercession is necessary in this matter. The parties must remember that the custody of minor children is never permanent and that a final option of the court is to remove the children from both parents.
 "The court has carefully considered the testimony concerning the alleged sexual abuse of the children. The court is fully aware that the specter of abuse is being raised in more and more cases involving custody and/or visitation. The court is also aware that the reporting of such incidences of abuse is really increasing, whether due to increased numbers or by better reporting of such, is uncertain.
 "From the evidence, the court is satisfied that the children's stepfather touched, played with, pinched, and tickled the children in an inappropriate manner. However, the court is further satisfied that such incidences have stopped and, much more important, that the children do not appear to have been psychologically damaged to any degree. The court is fully confident that such inappropriate touching shall not be repeated.
 "It is then the opinion of the court that custody should remain joint but that visitation should be specified.
"It is therefore ADJUDGED as follows:
 "ONE: That the parties shall retain the joint custody of [K.E.] and [C.E.].
 "TWO: That physical custody of the children shall be shared as follows: . . . ."
The trial court then set out the "visitation" schedule, which gave the father and mother alternating custody of the children for two-week periods. The trial court noted that
 "[t]here shall be no exception to the above custody provisions unless and until the parties come to the realization that they can provide better terms of visitation terms than the court, at which time the court will entertain a joint motion from the parties."
Both parties have appealed.
At the outset we note that the trial court correctly states the law concerning visitation disputes. Custody of children should not be modified due solely to problems of visitation.Ward v. Rodenbaugh, 509 So.2d 910 (Ala.Civ.App. 1987). We also point out that, from a review of the record, it is abundantly clear that an amicable visitation schedule for the father was not being reached. In fact, the trial court specifically found that, due to such a lack of cooperation between the parties, a visitation schedule should be specified. From a review of the record, we are in agreement with the trial court up until this point.
However, as concerns the purported visitation schedule set out by the trial court, we find that we have no alternative but to reverse. Pursuant to the original divorce decree, the mother was awarded physical custody of the children and was therefore the custodial parent. See Beam v. Beam, 543 So.2d 700
(Ala.Civ.App. 1989). As there has already been a judicial determination of primary physical custody, we are thereby governed by Ex parte McLendon, 455 So.2d 863 (Ala. 1984), as concerns any modification of this custody arrangement. SeeBeam, supra.
Here, the effect of the trial court's purported visitation schedule is to change the original custody determination. Pursuant *Page 43 
to the present order, the parties will now share the custody of the children on an alternating two-week basis. Without the father's meeting the stringent standard set out inMcLendon, the trial court consequently erred in the purported visitation determination. As noted above, visitation disputes alone are not enough to warrant a change in custody. Ward,supra. Therefore, in this respect, the trial court's order is reversed and remanded for it to enter an order specifying certain reasonable times and dates for the father to exercise his rights to visit with his children.
We will now address the remaining issues raised by the father. First, the father contends that the trial court erred by not finding the mother in contempt of court. He argues that the mother failed to permit him the visitation ordered by the court and therefore that she should have been punished.
The presence of contempt is a question for the trial court's determination. Reddish v. Reddish, 455 So.2d 891
(Ala.Civ.App. 1984). Our scope of review on the issue of contempt is limited to questions of law and, if there is any evidence to support its finding, the judgment of the trial court will not be disturbed. Murphy v. Murphy, 395 So.2d 1047 (Ala.Civ.App. 1981). The original judgment provided for visitation by the father on two occasions weekly and every other weekend. However, it did not specify on which days the weekly visits would be. The evidence reveals that the father routinely visited on Tuesdays and Thursdays and that, as the children became older, this schedule conflicted with school and extracurricular activities of the children.
In view of the above, we cannot find that the trial court erred in not holding the mother in contempt for failing to permit visitation.
The father also raises numerous evidentiary issues concerning the alleged sexual abuse of the children. We have reviewed the record and find no abuse of discretion by the trial court concerning these issues.
Finally, the husband contends that the trial court erred by not granting him full custody. As pointed out above, the mother in the instant case is the custodial parent. In order to accomplish the transfer of physical custody from the mother to the father, the father must prove at the outset that a material change in circumstances has occurred since the last decree.Beam, supra. He must then prove not only that he would be a fit parent, but that a change in custody would promote the child's best interest. Beam, supra. The benefits of the proposed change must clearly outweigh the disruptive effect caused by such a transfer. Beam, supra.
Here, there are numerous allegations by the father of sexual abuse of the children while in the mother's custody. However, the trial court heard the evidence and concluded in its order that any incidences of inappropriate touching or tickling had stopped and that the children did not appear to have suffered any psychological damage. Therefore, we find that the father has not at this time met the stringent standard set out inMcLendon.
This case is due to be affirmed in part and reversed and remanded in part with directions.
AFFIRMED IN PART; REVERSED AND REMANDED IN PART WITH DIRECTIONS.
ROBERTSON and RUSSELL, JJ., concur.