SAM A. BEATTY, Retired Justice.
I.M. appeals from a judgment awarding her former husband, J.P.F., custody of their two children. Previously, the parties had shared joint custody of the children. We affirm.
The parties were divorced in 1992. Their divorce judgment provided for them to share joint legal and physical custody of their children. During the school year, the children were to reside with the father during the week and with the mother on weekends. During the summer, the children were to reside with the mother dining the week and with the father on alternate weekends. In 1994, the mother petitioned to modify the judgment, alleging that the joint custody arrangement created problems for the children and requesting that she be awarded their primary custody. The father then filed his own petition to modify. He also alleged that the joint custody arrangement created problems for the children, and he requested that he be awarded their primary custody. Immediately before trial, the mother withdrew her petition to modify, and at that point requested that the joint custody arrangement be continued.
After petitioning for a modification, each party accused the other of allowing the children to see inappropriate sexual material or activity. Because of these accusations, a protective services investigator from the Marshall County Department of Human Resources and a counselor from the Marshall County Department of Mental Health interviewed the children and both parties. The investigator and counselor both interviewed the children independently of their parents, stepparents, and each other. The investigator stated that the mother’s present husband reported that the parties’ son had told him and his mother that he had seen his father and his present wife engaging in sexual activity, and that certain actions of the parties’ daughter led him to believe that she had been sexually abused in some way. The investigator testified that during her initial interview with the parties’ son, he showed her what he had allegedly seen, using anatomically correct dolls. She further testified, however, that during her later interviews with the children, they consistently told her that their mother had made them lie about seeing their father and his wife. The investigator recommended that the children live with their father. The counselor also testified that during her interviews with the children, they told her that they had been coaxed by their mother to say things about sexual abuse, described to her the things they had been coaxed to say, and asked her not to tell. The counselor stated that both children exhibited knowledge of sexual activity and language that was inappropriate for their ages (six and four at the time of trial), but in her opinion, she said, the children had not been physically abused and were parroting something that someone else had told them. The counselor recommended a permanent custody arrangement for the children and further counseling for the children and family members. She did not state a preference for one parent over the other, but stated that the father seemed “extremely concerned and caring” and that she had concerns about the mother because of the chil *845 dren’s reports about what their mother had asked them to do.
In addition to the investigator and counsel- or, both parties testified at trial, as well as the mother’s present husband, his 16-year-old daughter, the owner of the day care center attended by the children, and the son’s first-grade teacher. Many aspects of this testimony were conflicting. The trial court then entered a judgment in which it found that, despite “serious concerns” about the father, he had “carried his burden of proof as required by [Ex parte McLendon, 455 So.2d 863 (Ala.1984),] and that a modification of custody would materially promote the best interests of the children of the parties.” The trial court awarded custody of the children to the father, ordered the parties and the children to participate in counseling paid for by the father, and held the issue of child support in abeyance. In response to a post-judgment motion filed by the father, the trial court amended the judgment to require the mother to pay child support and to provide that the parties share counseling expenses. The mother then filed a post-judgment motion, but the trial court refused to further amend the judgment.
On appeal, the mother’s only contention is that the evidence presented at trial was insufficient to justify the change in custody.
Decisions regarding child custody and its subsequent modification are committed to the sound discretion of the trial court, and any child custody order based on evidence presented ore tenus is accorded a presumption of correctness on appeal. Jones v. Sprinkle, 621 So.2d 1341, 1342 (Ala.Civ.App.1993). This court will not reverse unless it concludes that the order is so lacking in evidentiary support as to be plainly and palpably wrong, or unless it finds an abuse of the trial court’s discretion. Phillips v. Phillips, 622 So.2d 410, 412 (Ala.Civ.App.1993).
The appellate courts in Alabama use two different standards when reviewing custody determinations. Ex parte Couch, 521 So.2d 987, 989 (Ala.1988). When custody is decided initially, then the appropriate standard is the child’s best interest. See Murphy v. Murphy, 479 So.2d 1261 (Ala.Civ.App.1985). If a prior judgment has granted custody to one parent, however, then the parent seeking a change in custody bears the burden of proving not only that a material change in circumstances has occurred since the prior order, but also that a change in custody will materially promote the child’s best interest and that the benefits of a change in custody will overcome the inherently disruptive effect caused by uprooting the child. See Ex parte McLendon, 455 So.2d 863 (Ala.1984). In a ease such as this, where the parties initially shared joint legal and physical custody, our supreme court has determined that upon review of a subsequent designation of a primary physical custodian, the “best interest” standard is applicable. Couch, 521 So.2d at 989. We note that the trial court applied the McLendon standard here rather than the “best interest” standard, but because the McLendon standard is more stringent, the trial court’s error in that regard is harmless. Beam v. Beam, 543 So.2d 700 (Ala.Civ.App.1989).
When a trial court has heard conflicting testimony, it has the duty to resolve the conflicts in the evidence and to render a judgment accordingly. Beam, 543 So.2d at 702. The trial court has the opportunity to hear the evidence, to observe the witnesses, and to judge the weight of the evidence and the credibility of the witnesses. Durham v. Sisk, 628 So.2d 873 (Ala.Civ.App.1993). As this court noted in Durham:
“ ‘The polestar in custody matters now is truly the best interest of the child. The one first charged with following that star is the trial judge. He or she is the one closest to the scene and the protector of the children until they become adults. That responsibility is awesome and must weigh heavily upon the bearer. It is in recognition of that burden that our appellate courts presume that the trial judge, who observed the parties and heard the testimony of the witnesses, correctly discharged his responsibility.’ ”
628 So.2d at 876 (quoting Smith v. Smith, 448 So.2d 381, 383 (Ala.Civ.App.1984)). This ease involved particularly sensitive matters, and, after reviewing all of the evidence pre *846 sented to the trial court, we conclude that that court’s award of custody to the father was neither plainly and palpably wrong nor an abuse of discretion.
The father’s request for an attorney fee pursuant to Rule 38, Ala.R.App.P., is denied.
Let the judgment be affirmed.
The foregoing opinion was prepared by SAM A. BEATTY, Retired Justice, Supreme Court of Alabama, while serving on active duty status as a judge of this court under the provisions of § 12-18-10(e), Ala.Code 1975.
AEFIRMED.
All the judges concur.